### HALL v. REDDING et als.

THE Uncle Sam Mining Company execute a mortgage upon their mining claims to R. a Director of the company. The mortgage was in fact in trust to secure F. et als. who had, as sureties of R. signed with him a joint and several note to D. for money loaned by him to R. The money was for the company. R. assigns this mortgage to F. to secure him against his liability on the note, delivering the mortgage, at the same time, to F. who retained it a few minutes and returned it to R. to receive the interest from the company, as agent for him, F. The note is unpaid; R. owes the company nothing: *Held*, that after the assignment, R. had no interest in the mortgage which a judgment creditor could reach ; that the delivery of the mortgage to R. for the purpose of collecting interest, there being no circumstance of fraud or suspicion, did not impair the rights of the assignee ; that the liability of F. et als. as sureties was a sufficient consideration for the assignment, and that such assignment is not a mortgage of a mortgage.

Hall *v.* Redding *et als.*

The doctrine of continuous possession of personal property after sale or mortgage does not apply to the case of a paper, the mere evidence of a debt.
Nor does the Chattel Mortgage Act, or the general statute of frauds apply to such case.

APPEAL from the Fourteenth District.

The mortgage to Redding was executed under the Chattel Mortgage Act, and was direct to him without expressing on its face any trust in favor of Fall *et als.*  Plaintiff appeals.

*McConnell,* for Appellant.

I.  Did the relation of principal and sureties, subsisting between Redding and Fall, Taylor and others, of itself operate to vest in them any present interest, legal or equitable, in the mortgage from the Uncle Sam Company to Redding?

II.  If it did not, then did the assignment from Redding to Fall operate to pass the title in such mortgage?

The debt for which Fall is surety has not been paid.  The relation of principal and surety of itself involves no higher equities than that of debtor and creditor.  It is only when the surety pays the debt of his principal that his equities begin to vest.  He then becomes entitled to demand from the creditor all the securities and remedies against the principal debtor which he at any time had, and if the creditor has released or extinguished any of these securities it may operate to discharge the surety.  But this rule does not seem to have ever been applied as between the surety and the principal debtor himself.

The rule as between the creditor and surety, is founded upon the idea of trust.  The creditor is regarded in equity as occupying the position of Trustee for the surety who has paid the debt.  But there is no element of trust in the relation subsisting between the surety and the principal debtor.  A surety before judgment has no legal or equitable liens against the property of his principal.  The latest case on this question is *Copis* v. *Middleton,* reported in Mylne & Keene.

The next question is, is there an express trust?

There is no mention of the trust in the mortgage deed, nor was there any other paper produced declaring the trusts, or leaving the uses otherwise than as they were limited by the

terms of the mortgage itself, that is to Redding. There is, in a legal point of view, an express trust in favor of Redding himself, existing by the direct terms of the deed, which the defendants seek to set aside by parol proof of the intention of one only of the parties to the deed, viz. Redding.

Again, there can be no such thing as an express trust over lands or fixed property unless it be declared in writing. (Wood's Digest. 106, Secs. 6 and 7, of an Act concerning Fraudulent Conveyances and Contracts.)

We contend, next, that the assignment was insufficient to pass the title to the mortgage.

The assignment in terms is to secure Fall as surety. It is, therefore, a mortgage of a mortgage. Every conveyance for the purpose of securing the payment of a debt, the performance of any act, is a mortgage. The original mortgage itself was executed in pursuance of what is termed the Chattel Mortgage Act. (See Wood's Digest, 108, 109.)

The question is, what interest Redding had in the mining claims by virtue of the mortgage to him.

If he had any estate, either legal or equitable, then in order to mortgage that interest to Fall, the same steps were necessary which were required to mortgage the mining ground itself. The assignment does not purport to be in conformity with the Chattel Mortgage Act. It appears, on the contrary, to have been an intentional departure therefrom. Therefore it did not pass Redding's estate, if he had an estate. But the law does not give to the mortgagee an estate in the thing mortgaged. A mortgage is a chose in action. (McMillan v. Richards, 9 Cal. 368.) A chose in action passes by delivery.

Besides, Fall had possession of the mortgaged property for the space of fifteen minutes, and then redelivered it to Redding as his agent. This violates the Statute of Frauds. (Wood's Dig. 107.)

III. The finding of facts by the Court is contrary to the evidence, and, therefore, the conclusions of law of the Court are erroneous.

*Vanclief & Stewart*, for Respondents, argued that no debt ever existed from the company to Redding, and that the mortgage was

given to secure Redding and his co-obligors on the note to Decker. If Redding had himself paid the notes, the company might have been indebted to him, and such debt might have been secured by the mortgage.    Before this assignment, Fall, in equity, had the same interest in the mortgage that Redding had, and the assignment was made for the purpose of greater security to Fall, and for the purpose of giving him a direct remedy against the Uncle Sam Company in case he was compelled to pay the note. This was consideration enough to make the assignment valid. (*Hickox* v. *Lowe et al.* 10 Cal. 197; *Dana* v. *Stanford,* Id. 269.)

The statute requiring an actual and continued change of possession, applies only to goods and chattels, and not to a mortgage.    (Wood's Digest, 107, Sec. 15.)

The assignment is in writing, subscribed by the party making it, and is sufficient.    (*Runyon* v. *Mersereau,* 11 John. 534.)    If no assignment had been made the Appellant could not have maintained his action.    Redding had not paid, and could not pay, the debt to Decker.    Fall is still liable and solvent.    A Court of Equity will not in such a case rob him of his only security.

BALDWIN, J. delivered the opinion of the Court—FIELD, J. concurring.

This was a bill filed by the plaintiff as a creditor of Redding, to subject to plaintiff's judgment a mortgage executed to Redding by the Uncle Sam Mining Company.    The bill charged that Redding had, before the judgment, made a pretended assignment of this mortgage to the defendant, Fall, to secure him against a certain demand against Redding, for which Fall was his security.    This assignment the bill charges to be fraudulent. 1. It was without legal consideration.    2. Made to hinder creditors.    3. Because the mortgage was not delivered to Fall.    4. And it is further asserted that the assignment is insufficient on its face to pass the title of the mortgage.

Fall and Redding answered denying the fraud charged.

The Judge below finds this state of facts : That in September, 1857, Redding was President of this mining company, and that the company authorized Redding and one Burgess to buy a steam engine and other machinery to work the claims; that to raise the money they negotiated a loan with one Decker for five

thousand dollars, to secure which, the note of Redding, Fall, and two others—the last three as sureties—was made; that of this sum three thousand dollars was appropriated to buying a steam engine and appurtenances—the balance paid to the Treasurer of the company or laid out for its uses; the machinery was placed in the claims, where it is yet. At the maturity of the note, Decker delivered it to the makers, and it was canceled, when a new note was given to Decker, for the same money, due 25th of May, 1858, signed by Redding, Fall, Taylor, and one Gingle; the company paid the interest on these notes as it fell due. That some time after the five thousand dollars was obtained, and before the making of the mortgage to Redding, in the bill mentioned, the company issued an order on the Treasurer of said company, payable to Fall and others, for the sum of five thousand dollars. That at the time this mortgage was executed, a settlement took place between Redding and the company, and a balance of one hundred dollars found due the company from Redding, which was deducted from the order drawn in favor of Fall & Co. Redding then desired that the company should execute a mortgage on the mining claims to secure Fall *et al.* against their liability on the note of Decker; this the company refused to do, for the reason that they did not wish to have so many creditors, but proposed to execute a mortgage to Redding individually; this was accordingly done on the 12th April, 1858, and it is the one in controversy. On the execution of the mortgage, Redding delivered up to the company the order in favor of Fall *et al.* When the last note to Decker became due, he demanded a renewal of it, and the makers renewed it, taking up the former. At this renewal, Redding assigned the mortgage to Fall, and both the assignment and mortgage were duly recorded, 25th May, 1858. That at the time of the assignment of the mortgage, the same was delivered to Fall, who retained it for a few minutes and then returned it to Redding, as the agent of Fall, to receive the interest of the company. The Court finds that the consideration of this assignment was the liability of Fall *et als.* on this note to Decker. The Court find the subsequent acts of the parties consistent with the arrangement—the Decker note has not yet been paid by these sureties. There is no debt due from the company to Redding, other than appears from the facts already stated.

Hall *v.* Redding *et als.*

The Court accordingly dismissed the bill.

We think rightly.  The object of the bill being to seize and appropriate the interest of Redding in this mortgage, treating it as a valid security in his hands, no question, of course, is raised as to its validity.  The only question is a question of fact, whether Redding had any interest, which, in equity, should go to this creditor.  In order so to hold, it is necessary to show that Redding had a beneficial interest in the subject matter.  It might be difficult for the plaintiff to show, even if there had been no assignment of this mortgage, it having been executed to Redding merely in trust, that he had such interest.  But after the assignment which executed the trust, there is no pretense that any interest remained which could be appropriated by the creditor of Redding, the latter being the mere conduit through which this title passed.  Nor do we consider that any further delivery of the mortgage or assignment of it as security for the protection of Fall than is proven was necessary.  A corporal delivery and retention of a paper answers none of the purposes of publicity or notice which are subserved by the possession of personal or even real estate, though delivery, of course, is essential to give effect to the contract.  But, after such delivery, the lodging of the paper in the hands of the nominal mortgagee for the purpose of collecting the interest, did not, in the absence of any circumstance of fraud or suspicion, impair the right of the assignee.  The papers were recorded, and it no where appears that the transaction misled the plaintiff or induced him to advance his money or extend credit to his debtor, much less that anything was done by Fall with this design.  It seems to be a fair transaction, entirely free from fraud, and there is no pretense for holding that the defendant, Redding, had any interest in the mortgage debt or property which a Court of Equity could subject to the payment of the plaintiff's claim.  The Appellant supposes that the evidence does not sustain this finding of facts; but certainly, taking the whole transaction together, it tended to establish the main facts stated.  But we do not deem it very important to view critically the proofs; for enough of the statement is undisputed to justify the conclusion of the Court.

The assignment of the mortgage was sufficient.  We do not understand it to be a mortgage of a mortgage.  It is the assign-

ment of a mortgage for a particular purpose, to wit: the security of the assignee as surety for a note. But the assignment vested all the interest of the mortgagee in the assignee, who could enforce the mortgage and hold the proceeds in trust for the proper purposes of the assignment. Nothing was required of him but to make the assignment available in the given contingency, or, probably, he might have enforced it before he was required to pay the debt. It is like a promissory note assigned as a security to a party for indemnity against his suretyship. The consideration of such liability is sufficient to support the assignment, and it is not required, in order to the validity of the transfer, that the assignee, after receiving it, should keep the ` paper in his pocket or his desk all the time. The doctrine of continuous possession of personal property has no application to the case of a paper, the mere evidence of a debt. Nor is it embraced by the provisions of the Chattel Mortgage Act, or the general Statute of Frauds.

Decree affirmed.